IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONILLA ET AL,<br><br>   Plaintiff,<br><br> v.<br><br>E.G. CONSTRUCTION ET AL,<br><br>   Defendant. | No. C-05-03151 EDL<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT** |

  Plaintiffs are various fringe benefit trust funds established for the benefit of members of Operating Engineers Local Union No. 3 of the International Union of Operating Engineers ("union"), and the trustees of those fringe benefit trust funds. See First Amended Complaint, filed March 7, 2006. Defendant, E.G. Construction, is bound by a collective bargaining agreement and various trust agreements to make timely contributions to plaintiff trust funds for covered work performed by E.G. Construction employees.   First Amended Complaint, ¶ 8; McBride Decl., ¶¶ 5-9. Defendant Ezra Phillip Green is an individual and owner of E.G. Construction. Bevington Decl., ¶ 3 and Ex. A; First Amended Complaint, ¶5.

  On August 3, 2005, Plaintiffs filed a complaint against E.G. Construction and Ezra Phillip Green seeking to collect unpaid contributions due to multi-employer benefit plans and to obtain monthly reports pursuant to the governing collective bargaining agreement. See Complaint; First Amended Complaint (filed March 7, 2006).  Plaintiffs also allege that E.G. Construction and Ezra Phillip Green refused to submit to an audit as required by the collective bargaining agreement, and ask the Court to compel defendants to comply with such an audit.  Id.

//

Plaintiffs served Defendants with the Complaint on September 6, 2005, and Defendants failed to respond. Plaintiffs moved for default, which the Clerk of the Court entered on December 6, 2005. The parties engaged in settlement talks, which were unsuccessful. See Bevington Decl., ¶ 8 and Ex. C at 2. Subsequently, Plaintiffs requested that the Court set aside the default entered against Defendants in order to file a First Amended Complaint which "set out the known amounts that were due when the action was filed." See [Second] Case Management Statement (Doc. No. 11) (filed Feb. 27, 2006), at 2:3-4. The Court granted Plaintiff's request on March 6, 2006.

Plaintiffs served Defendants with the First Amended Complaint on March 22, 2006. Once again, Defendants failed to respond. Plaintiffs again applied for an entry of default, which the Clerk of the Court entered on November 17, 2006. On April 27, 2007, Plaintiffs filed and served their Motion for Default Judgment, which is now before the Court. See Motion for Default Judgment. On June 6, 2007, this Court conducted a hearing in connection with Plaintiffs' Motion. Anne Bevington appeared on behalf of Plaintiffs. No appearance was made on Defendants' behalf.

In their Motion, Plaintiffs request that the Court enter a judgment against E.G. Construction and Ezra Phillip Green, individually, in the amount $145,968.50 to recover unpaid contributions, pre-judgment interest, liquidated damages, attorneys' fees and costs. McBride Decl., ¶¶ 12-20; Bevington Decl., ¶ 2-5. Plaintiffs also seek an order compelling defendants to submit to an audit of defendants' financial records. First Amended Complaint, ¶ 15; Motion at 12:8-16. Finally, Plaintiffs request a order reserving the jurisdiction of the Court to hear a motion for further money judgment against Defendants for additional unpaid employer contributions and related interest and damages they may be discovered by the audit they requested. Motion at 12:16-20.

Because Defendants have not appeared in this action, this Court has not secured consent as required by 28 U.S.C. § 636(c). Accordingly, the Court makes the following Report and Recommendation:

**I.     Plaintiffs are Entitled to Default Judgment**

Plaintiffs seek entry of judgment by default against the entity E.G. Construction as well as against Ezra Phillip Green, individually. Plaintiffs served defendants with their motion for default judgment. See Proof of Service, attached to Motion (filed April 27, 2007). A court may not enter a

2

default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 520. Neither E.G. Construction nor its principal Mr. Green is not an unrepresented minor, an incompetent person or a person in military service, or otherwise exempted from default judgment. Bevington Decl. ¶ 3.

### A. E.G. Construction, Inc.

E.G. Construction has failed to respond to the First Amended Complaint or otherwise to appear in the proceedings. By its default, E.G. Construction is deemed to have admitted the well-pleaded averments of the complaint except those as to the amount of damages. See Fed. R. Civ. P. 8( d). Accordingly, E.G. Construction concedes that it owed a duty to submit contributions to the Trust Fund for each hour worked by covered operating engineer personnel, it breached that duty, and that it is indebted to Plaintiffs. See First Amended Complaint, ¶ 11.

Given Defendants' failure to appear or to settle the dispute, and the significant risk of prejudice to the employee beneficiaries of the fringe benefit trusts when an employer fails to make the required contributions, the sufficiency of Plaintiff's First Amended Complaint, and the apparent merit of Plaintiffs' substantive claims, the Court RECOMMENDS that default judgment be entered against E.G. Construction. See Fed.R.Civ.P. 55(b); Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986).

### B. Ezra Phillip Green

Like E.G. Construction, Mr. Green has also failed to respond to the complaint, or to the allegation that he is an "employer" under ERISA. See First Amended Complaint, ¶ 5. The Clerk of the Court entered default as to both Defendants. By not responding to the Complaint or otherwise appearing in the proceedings, Ezra Phillip Green has conceded that Plaintiffs' factual allegations are true. The Complaint alleges that he is an "employer" under ERISA, but this is a conclusion of law, not a factual allegation. The courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

Plaintiffs have also alleged that Mr. Green "owns, operates and controls" E.G. Construction and that he and the business are one and the same. First Amended Complaint at ¶ 5. Plaintiff has admitted these allegations by his default. Plaintiff argues that Mr. Green should therefore be liable to the trust funds for the contribution obligations of E.G. Construction, either as "an 'employer'

acting directly as 'employer' or indirectly in the interest of E.G. Construction.  Motion at 7:23-25.

Plaintiff has provided no evidence that Mr. Green was acting <u>directly</u> as an employer.  The evidence Plaintiff submitted shows that, to the contrary, a contractor license was issued to "E Green Construction Inc. dba E G Construction."  <u>See</u> Bevington Decl., Ex. A.  Nor has Plaintiff provided evidence that, as an employer, Mr. Green was a member of AGC or AECE, or was a member in any other organization that is bound by the Master Agreement or any other benefit plan.  Accordingly, there is insufficient evidence to conclude that Mr. Green is an "employer" under ERISA.

Plaintiff also seeks to hold Mr. Green responsible <u>indirectly</u> because of his actions in the interest of E.G. Construction.  Motion at 7:23-25.  Plaintiff has provided evidence that E.G. Construction is an incorporated entity and Mr. Green was the only executive officer of E.G. Construction.  <u>See</u> Bevington Decl., ¶ 3 and Ex. A.  However, Plaintiff has not provided any evidence to suggest that E.G. Construction was a mere corporate fiction.  Plaintiff has not shown, for example, that Mr. Green paid his employees with checks from his personal account, rather than those of the corporation.  Nor has Plaintiff shown anything to indicate that E.G. Construction is undercapitalized to the point that its executive may be held personally liable for its debts.  Plaintiff has not provided sufficient evidence to pierce the corporate veil to hold Mr. Green personally liable for the debts of E.G. Construction.

Plaintiffs also seek to hold Mr. Green personally liable as a "fiduciary."  Motion at 7:15-10:8; First Amended Complaint, ¶5 .  Plaintiff alleged, and Mr. Green failed to refute, that Mr. Green is "a fiduciary as defined by ERISA Section 3(21)."  First Amended Complaint, ¶ 5.  But this, again, is a conclusion of law, not a factual allegation, which the Court need not accept as true.  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he ... exercises any authority or control respecting management or disposition of its assets."  Although Plaintiff has alleged that Mr. Green "made decisions as to whether payments [of contributions] were timely remitted to the Trust Funds," <u>see</u> First Amended Complaint, ¶ 5, this allegation refers only to <u>unpaid</u> contributions.  The Ninth Circuit has never created an exception to the general rule that <u>employer</u> assets do not become "plan assets" until they are paid over to the Trust.  <u>See</u> <u>Cline v. Industrial</u>

4

1  Maintenance Eng'g & Contr. Co., 200 F. 3d 1223, 1234 (9th Cir. 2000) ("Until the employer pays
2  the employer contributions over to the plan, the contributions do not become plan assets over which
3  fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a
4  fiduciary of the plan."); see also Moreno v. S.J. Weaver Contr., Inc., 2006 U.S. Dist. LEXIS 58917
5  (N.D.Cal. Aug. 9, 2006) (following Cline to hold that under Ninth Circuit law, the defendant "could
6  not have owed a fiduciary duty for the unpaid plan benefits, even if such benefits are owed.").

7  Plaintiff relies on Temecula, a 2006 case out of the Central District of California, and cases
8  from other Circuits, to conclude that an exception to the Ninth Circuit's rule exists where the
9  language of the Trust Agreement defines "Contributions" to include amounts "due and owing," as
10 here. See Trustees of Southern CA Pipe Trades Health and Welfare Trust Fund v. Temecula
11 Mechanical, Inc., 438 F.Supp. 2d 1156, 1165 (C.D. Cal. 2006) (finding an exception to the general
12 rule where the Ninth Circuit did not directly address the issue). While Temecula is carefully
13 reasoned, the contract language before it differs materially from the contract here.

14 In Temecula, the language of the Trust Agreement provided that "[t]he assets of this Trust
15 Fund consist of (1) the sums of money that have been or will be paid or which are due and owing to
16 the Fund by the Employers." See Temecula at 1165 (emphasis added). The court focused on the
17 language that "monies composing the Fund include those that are 'due and owing' from 'Employers'
18 and 'any [other] source.'" Further, the court noted that "the same 'due and owing' language used in
19 the Trust Agreements has been held by a number of courts as sufficient to identify unpaid employer
20 contributions as assets of the plan." Temecula, 438 F.Supp.2d. at 1165.

21 Here, by contrast, the language of the Trust defines contributions more narrowly as a
22 "payment made or to be made to the Fund by an Individual employer." Trust Agreement at Art. 1 §
23 11 (McBride Decl., Ex. B at 7). The Trust Agreement at issue does not include "due and owing" or
24 substantially similar language language indicating that assets had already vested in the Trust Funds.
25 Therefore, even if an exception to Cline may exist when unpaid contributions are due and owing,
26 this Court declines to extend that exception to this case. Accordingly, Mr. Green cannot be liable as
27 a fiduciary under ERISA because he did not control "plan assets."

28 Therefore, the Court RECOMMENDS that the District Court deny Plaintiffs' request to

5

impose liability on Mr. Green based on his status as a direct employer, and deny Plaintiffs' request to impose liability on Mr. Green on the alternative basis that Mr. Green has breached a fiduciary duty.

**II.     Specific Items of Relief Sought by Plaintiffs**

Section 1132(g)(2) of ERISA provides that in an action for delinquent contributions in which a judgment in favor of the plan is awarded the court <u>shall</u> award the plan --

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of –

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),

(D) reasonable attorneys' fees and costs of the action . . ., and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. §1132(g)(2) (emphasis added).

**A. Unpaid Contributions**

Plaintiffs seek unpaid contributions owing pursuant to the governing collective bargaining and trust agreements for work performed during the periods January through June 2002, January through November 2003, January through June 2004, and January through March 2005. McBride Decl., at ¶¶ 15 and 18 and Ex. D-F. The Master Agreement for Northern California is a collective bargaining agreement between the union and the Associated General Contractors of California, Inc. ("AGC"), the Association of Engineering Construction Employers ("AECE"), and other employer organizations. McBride Decl., at ¶ 5 and Ex. A. Plaintiff alleges that Defendant E.G. Construction became signatories to the Master Agreement pursuant to its member ship in AECE, and later its membership in AGC. McBride Decl., ¶ 5.

The collective bargaining agreement incorporates applicable Trust Agreements, and

6

signatories agree to be bound by the terms of those agreements. McBride Decl., ¶ 6 and Ex. A. The collective bargaining agreement governs employer contributions to the various employee fringe benefit trust funds and obligates employers to pay specified amounts into employee benefit funds on behalf of defendants' employees who perform covered work. McBride Decl., ¶¶ 6-7 and Ex. A at Ex. B. The collective bargaining agreement to which Defendant E.G. Construction is bound has never been terminated. McBride Decl., ¶ 5; Compl., ¶ 10. Accordingly, Defendant E.G. Construction is obligated to pay contributions for covered work by its employees for the period January 2002 through March 2005, and throughout its period of membership in AECE or ACG.

Plaintiff has the burden of proving its damages through testimony or written affidavit. Plaintiff has submitted evidence showing that Defendant E.G. Construction's known unpaid contributions total $40,870.11. See McBride Decl., ¶¶ 13-14 and 19-20, and Exs. D-F; Motion at 10:21-23.

Therefore, because Plaintiffs' request for unpaid contributions is supported by the evidence, the Court RECOMMENDS that the District Court enter judgment against Defendant E.G. Construction in the amount $40,870.11 for unpaid contributions for the periods January through June 2002, January through November 2003, January through June 2004, and January through March 2005.

**B. Liquidated Damages and Interest**

ERISA compels the court to award plaintiffs "liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court [as unpaid contributions]." 29 U.S.C. §1132(g)(2)(C)(ii). Liquidated damages are "mandatory and not discretionary" if "the following three requirements [are] satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award." Northwest Administrators, Inc. v. Albertson's Inc., 104 F.3d 253 (9th Cir. 1996) citing Idaho Plumbers & Pipefitters v. United Mechanical Contractors, Inc., 875 F.2d 212 (9th Cir. 1989).

Under Section 12.13.00 of the Master Agreement, delinquent employers are liable for interest and for liquidated damages. Liquidated damages begin accruing if a report is not received

7

by the 25th day of the month following the month in which the work was performed. McBride Decl., ¶ 16.

Accordingly, Plaintiffs seek liquidated damages for the period October 2004 through March 2005 at the contract rate of $35.00 per delinquent contribution or 15% of the amount of the contribution due to each separate Trust Fund, whichever is greater. McBride Decl., at ¶¶ 8 and 16 and Ex. A (Master Agreement) at § 12.13.00. Plaintiff alleges that, at the time of the filing of the Complaint, Defendants owed $83,978.29 in liquidated damages and accrued interest based on untimely payment of contributions and on unpaid contributions.

Plaintiffs have submitted evidence that supports a finding that contributions for the periods January through June 2002, January through November 2003, January through June 2004, and January through March 2005 were delinquent and unpaid at the time Plaintiffs filed their lawsuit on August 3, 2005, and that the collective bargaining agreement together with Trust Agreements provide for an award of liquidated damages on such sums at the rate of $35.00 per delinquent contribution or 15% of the amount of the delinquent contribution due to each separate Trust Fund, whichever is greater. McBride Decl., ¶ 8 and Ex. A. Therefore, liquidated damages may be assessed for the periods January through June 2002, January through November 2003, January through June 2004, and January through March 2005. See Northwest Administrators, Inc., v. Albertson's Inc., 104 F.3d 253 (9th Cir. 1996).

When the Court enters judgment in plaintiffs' favor for unpaid contributions, ERISA requires the Court to award plaintiffs "interest on the unpaid contributions." 29 U.S.C. §1132(g)(2)(B). ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan." 29 U.S.C. §1132(g)(2). Plaintiffs have submitted evidence that supports a finding that 12% is the applicable interest rate under the Trust Agreements. McBride Decl., Ex. A. Accordingly, Plaintiffs seek interest on the unpaid contributions at the annual contract rate of 12%. McBride Decl., ¶ 17.

Plaintiffs have calculated interest on unpaid contributions owed under Defendant E.G. Construction's AECE account in the amount of $14,392.67 for interest alone. Id., ¶ 13. Plaintiff have calculated liquidated damages and interest on unpaid contributions owed under Defendant's

8

ACG account in the amount of $49,026.49.  Id., ¶ 14.  These unpaid contributions are based on work hours reported by the employer or added after a random payroll inspection. Id., ¶ 15.  In addition, Plaintiff has calculated liquidated damages and interest in the amount of $2,752.55 owed under Defendant's ACG account for under-reported hours discovered by a review of paycheck stubs from the period January 2004 to March 2005.  Id., ¶ 15.

Plaintiffs' have also calculated interest that has accrued after the filing of the Complaint, from August 10, 2005 through June 10, 2007, in the total amount $18,800.20 in interest on a principal of $40,870.11.  Bevington Decl., ¶ 2.  This calculation is based on 12% interest on the $40,870.11 principal, for 46 months.  Id.; Motion at 3:27-4:1.  Calculation of additional interest accrued after the filing of the Complaint is based on the unpaid principal amount interest amount of contributions at the rate of 12% per year from August 10, 2005 through June 10, 2007).  Bevington Decl., ¶ 2.  In addition, Plaintiffs request that the Court award $13.44 per day for interest that accrues from June 10, 2007 to the date of the judgment, based on an interest rate of 12% on the same outstanding principal balance of $40,870.11.  Id.

Plaintiff's request is supported by the evidence as to interest accrued on unpaid contributions on Defendant's AECE and ACG account.  Plaintiff's request for additional interest from August 10, 2005 through June 10, 2007 is supported by the evidence.  Plaintiff's request for future interest, however, is premature before the judgment is entered without a showing that no payments on the past due amounts will be made before the date of judgment.

Therefore, the Court RECOMMENDS granting Plaintiffs' request for judgment for interest on the unpaid contributions at the rate of 12% on the delinquent contributions in the amounts stated above for interest due as of June 10, 2007.

### C.  Equitable Relief

Section 1132 of ERISA authorizes the Court to award "such legal and equitable relief as the court deems appropriate." 29 U.S.C. §1132(g)(2)(E).  Defendants (according to Plaintiffs' unrebutted allegations) have breached the collective bargaining agreement by, inter alia, refusing to submit to an audit.  McBride Decl., at ¶21.  As a result of the breach, Plaintiffs have been unable to verify the amount of Defendants' obligations.  Plaintiffs seek an order compelling Defendants to

9

submit to an audit for the period from April 1, 2005, through the present. McBride Decl., at ¶21; Motion at 11:21-23 and 12:8-16.

The governing Trust Agreements obligate the employer to submit to an audit of its records for the purpose of determining whether the employer has paid the appropriate amount of contributions to the trusts. McBride Decl., ¶ 21 and Ex. B (Trust Agreement) at § IV.6. Defendants have refused to date to allow this audit. McBride Decl., ¶ 21. As Defendant is contractually obligated to submit to an audit, and as Defendant has refused to submit to such an audit, Plaintiffs have demonstrated that injunctive relief is appropriate.

In order to conduct the audit, Plaintiffs seek auditor access to the following documents:

> Individual earnings records; Federal Tax Forms, W-3/W-2 and 1069/1099; Reporting forms for all Trust Funds, State DE-3/DE-6 Tax Reports; Workers' compensation insurance; Employee time cards; Payroll Registers/Journals; Quarterly payroll tax returns (Form 941); Check register and supporting cash vouchers; Forms 1120, 1040 or partnership tax returns; General ledger; Source records, including time cards and time card summaries for all employees, Certified payroll reports; Personnel records indicating job classifications and hire/termination dates; Cash disbursement journal; Vendor invoices; Copies of subcontract agreements; Cash receipts journal; Job costs records; Records of related entities; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation of defendants' financial records.

McBride Decl., ¶ 22.

Therefore, the Court RECOMMENDS that judgment be entered compelling Defendant E.G. Construction to submit to an audit for the purpose of determining the amount of fringe benefit contributions owed for the period April 1, 2005 to the present, and that the Defendant E.G. Construction be ordered to provide relevant records requested by the auditor including, without limitation, those described above.

### D.     Attorneys' Fees and Costs

Section 1132(g) of ERISA requires the Court to award plaintiffs "reasonable attorney's fees and costs of the action" when plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought. 29 U.S.C. §1132(g)(2)(D); Northwest Administrators, 104 F.3d at 258. Plaintiffs seek reimbursement of attorneys' fees and costs in the amount of $19,282.50 in attorneys' fees and

10

1  $844.18 for costs as of April 27, 2007. Bevington Decl., ¶¶ 4-5 and Exs. B-C. The Court has
2  reviewed counsel's billing statements and finds that the kinds of tasks performed by counsel were
3  reasonably undertaken. Most of the higher than normal fees are accounted for by counsel properly
4  spending a substantial amount of time attempting to negotiate a settlement and preparing settlement
5  documentation. Bevington Decl., ¶ 8. However, the total number of hours expended in completing
6  the other tasks are too high. Accordingly, the Court recommends awarding Plaintiffs attorneys' fees
7  for 80 hours.

8  Plaintiffs seek reimbursement of their attorneys' time at the rates of $225 per hour for Ms.
9  Bevington and Mr. Watson. Bevington Decl., ¶ 6. Mr. Watson's and Ms. Bevington's billing rates
10 are commensurate with the prevailing market rate in the Bay Area for lawyers of counsel's skill and
11 experience doing the kind of work these matters involved. Id., ¶ 7.

12 Plaintiffs also seek costs in the amount of $844.18. Bevington Decl., at ¶4 and Ex. B.
13 Plaintiffs' costs consist of this Court's filing fee, the cost of service of the Summons and Complaint
14 and other papers filed in this action, photocopies and postage, and moderate online research fees.
15 Bevington Decl., at Ex. B. The items for which reimbursement is sought constitute taxable costs
16 and/or out-of-pocket expenses normally chargeable to the client. Civil L.R. 54-3; Harris v.
17 Marhoefer, 24 F.3d 16 (9th Cir. 1994) (fee award under 42 U.S.C. §1988). The amounts expended
18 were reasonable.

19 Therefore, the Court RECOMMENDS that Plaintiffs' request be granted in the total amount
20 of for $844.18 for costs, and $18,000.00 for attorneys' fees.

21 **E.    Post-Judgment Relief**

22 Plaintiffs request that the Court award additional interest at the rate of $13.44 per day from
23 June 10, 2007 through the date of entry of this judgment. This request is premature, however. The
24 rate of $13.44 per day is calculated as an interest of 12% on the total amounts owed as of April 27,
25 2007. Defendant may pay on its debt between the date of this Recommendation and the date the
26 judgment is entered.

27 **III.   CONCLUSION**

28 For the reasons set forth above, and for good cause shown, It Is Hereby Recommended that

11

the following default judgment be entered:

This Court having previously entered default against Defendant A.G. Construction, and Plaintiffs having applied to this Court for the entry of default judgment,

IT IS ORDERED that:

1. Damages are awarded against Defendant A.G. Construction in the amount of $40,870.11;

2. Liquidated damages and interest are awarded against Defendant A.G. Construction in the amount of $63,419.16, consisting of $14,392.67 for interest on principal owed on under Defendant's AECE account as of June 25, 2005, $49,026.49 for liquidated damages and interest owed under Defendant's ACG account as of June 25, 2005;

3. Liquidated damages and interest in the amount of $2,752.55 owed under Defendant's ACG account for under-reported hours discovered by discovered by a review of paycheck stubs from the period January 2004 to March 2005;

4. Additional interest accrued from August 10, 2005 through June 10, 2007 on the foregoing totals, in the amount of $18,880.20 calculated through June 10, 2007; as set out in the April 27, 2007 Bevington Declaration filed in support of this Motion;

5. Attorneys' fees and costs are awarded in the amount of $18,000.00 in attorney's fees, and $844.18 in costs;

6. Defendant is ordered to submit to an audit on two days written notice from the plaintiffs. Defendants will make available to plaintiffs the following records, for the time period April 1, 2005 to the date of this Recommendation:

> Individual earnings records; Federal Tax Forms, W-3/W-2 and 1069/1099; Reporting forms for all Trust Funds, State DE-3/DE-6 Tax Reports; Workers' compensation insurance; Employee time cards; Payroll Registers/Journals; Quarterly payroll tax returns (Form 941); Check register and supporting cash vouchers; Forms 1120, 1040 or partnership tax returns; General ledger; Source records, including time cards and time card summaries for all employees, Certified payroll reports; Personnel records indicating job classifications and hire/termination dates; Cash disbursement journal; Vendor invoices; Copies of subcontract agreements; Cash receipts journal; Job costs records; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation of defendants' financial records.

//

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy . See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

**IT IS SO RECOMMENDED.**

Dated:   June 8, 2007

*Elizabeth D. Laporte*

ELIZABETH D. LAPORTE

United States Magistrate Judge